1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **EASTERN DIVISION**

11

12   MANDA FAYE WHITE,                )    No. ED CV 16-618-PLA
                                      )
13              Plaintiff,            )    **MEMORANDUM OPINION AND ORDER**
                                      )
14        v.                          )
                                      )
15   NANCY BERRYHILL, ACTING          )
     COMMISSIONER OF SOCIAL           )
16   SECURITY ADMINISTRATION,         )
                                      )
17              Defendant.            )
     _____)

18

19                              **I.**

20                         **PROCEEDINGS**

21       Plaintiff filed this action on April 6, 2016, seeking review of the Commissioner's[1] denial of

22   her application for Disability Insurance Benefits ("DIB").  The parties filed Consents to proceed

23   before the undersigned Magistrate Judge on April 27, 2016, and April 28, 2016.  Pursuant to the

24   Court's Order, the parties filed a Joint Submission (alternatively "JS") on February 13, 2017, that

25   addresses their positions concerning the disputed issues in the case.  The Court has taken the

26

27
_____

28        [1]   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current
     Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

1 | Joint Submission under submission without oral argument.

2

3

**II.**

4

**BACKGROUND**

5 | Plaintiff was born on April 12, 1960. [Administrative Record ("AR") at 157, 805.] She has

6 | past relevant work experience as an administrative assistant. [AR at 805, 866-67.]

7 | On March 31, 2010, plaintiff protectively filed an application for a period of disability and

8 | DIB, alleging that she has been unable to work since October 29, 2009. [AR at 11, 157-58, 178.]

9 | Plaintiff's application and request for reconsideration were denied, and after a hearing, an

10 | unfavorable decision was issued on February 16, 2012. [AR at 11-18.] Plaintiff filed a complaint

11 | in this Court in case number ED CV 13-1626-PLA, and on August 21, 2014, the Court remanded

12 | the matter for further proceedings. [AR at 904-21.] In its remand order, the Court ordered that

13 | on remand the ALJ "consider plaintiff's migraine headache condition to be a 'severe' condition,"

14 | and reevaluate plaintiff's subjective symptom testimony. [AR at 835; see also AR at 797.] On

15 | September 30, 2015, a hearing was held on remand before a different ALJ, at which plaintiff

16 | appeared represented by an attorney and testified on her own behalf. [AR at 837-69.] A

17 | vocational expert ("VE") and two medical experts ("ME") also testified. [AR at 843-50, 851-61.]

18 | On December 11, 2015, the ALJ issued a decision concluding that plaintiff was not under a

19 | disability from October 29, 2009, the alleged onset date, through September 30, 2013, the date

20 | last insured. [AR at 806.] When the Appeals Council denied plaintiff's request for review on July

21 | 8, 2013 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam

22 | v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

23

24

**III.**

25

**STANDARD OF REVIEW**

26 | Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

27 | decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

28 | evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

3

1  828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

2  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

3  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

4  substantial gainful activity, the second step requires the Commissioner to determine whether the

5  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

6  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

7  If the claimant has a "severe" impairment or combination of impairments, the third step requires

8  the Commissioner to determine whether the impairment or combination of impairments meets or

9  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

10  subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If

11  the claimant's impairment or combination of impairments does not meet or equal an impairment

12  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

13  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

14  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

15  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

16  prima facie case of disability is established.  Id.  The Commissioner then bears the burden of

17  establishing that the claimant is not disabled, because she can perform other substantial gainful

18  work available in the national economy.  Id.  The determination of this issue comprises the fifth

19  and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at

20  828 n.5; Drouin, 966 F.2d at 1257.

21

22  **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

23          At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity

24  during the period from October 29, 2009, the alleged onset date, through September 30, 2013,

25  her date last insured.[2]  [AR at 799.]  At step two, through the date last insured, the ALJ concluded

26

27

28          [2]   The ALJ concluded that plaintiff met the insured status requirements of the Social
Security Act through September 30, 2013.  [AR at 799.]

that plaintiff had the severe impairments of headaches, high blood pressure, depressive disorder, and anxiety disorder.  [Id.]  She found plaintiff's alcohol abuse and history of bariatric surgery to be nonsevere impairments.  [AR at 800.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 800.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [N]oncomplex, routine tasks; no tasks requiring hypervigilence; no interaction with the public; no work hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles; no ladders, ropes, and scaffolds; and a static work environment (i.e., few changes on a day-to-day basis).

[AR at 802.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that through the date last insured plaintiff was unable to perform her past relevant work as an administrative assistant.  [AR at 805, 866-68.]  At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "assembler small products" (Dictionary of Occupational Titles ("DOT") No. 706.684-022), "inspector" (DOT No. 559.687-074), and "marker" (DOT No. 209.587-034).  [AR at 806, 867.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 29, 2009, through September 30, 2013, the date last insured.  [AR at 806.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she:  (1) considered the effect of plaintiff's headaches on her ability to work at step five of the sequential evaluation process; and (2)

---

3   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1    assessed plaintiff's subjective symptom testimony. [JS at 5.] As set forth below, the Court agrees

2    with plaintiff, in part, and remands for further proceedings.

3

4    **A.    THE EFFECT OF PLAINTIFF'S HEADACHES ON THE ALJ'S STEP FIVE ASSESSMENT**

5          Plaintiff contends that the ALJ erred at step five of the sequential evaluation process when

6    she failed to consider the effect of plaintiff's severe impairment of headaches on plaintiff's ability

7    to work.  (JS at 5, 7).  Specifically, plaintiff notes that the ALJ failed to include any specific

8    reference in her RFC assessment that plaintiff would be incapable of performing work activity

9    during and sometimes immediately following her headaches. [JS at 7 (citing AR at 802).]  Instead,

10   plaintiff argues, the ALJ gave "great weight" to the opinions of the non-examining medical expert,

11   Dr. Sabow, who testified at the hearing that plaintiff's migraine headaches "'are not disabling.'"[4]

12   [Id. (citing AR at 804).]  Plaintiff argues that in light of the fact that as a severe impairment her

13   headaches by definition "'more than minimally affect her ability to perform basic work activities,'"

14   the ALJ erred when she failed to include any limitations resulting from plaintiff's headaches in the

15   RFC assessment. [JS at 7-8 (citing AR at 799).]  Plaintiff further submits that the ALJ "should not

16   be allowed to adopt and attribute great weight to the conclusionary statement made by her own

17   medical expert," Dr. Sabow, that plaintiff's headaches were "not disabling," as this is a conclusion

18   that is reserved for the Commissioner "and cannot form the basis of the ALJ's assessment

19   regarding the limiting effects of [plaintiff's] headaches."  [JS at 8.]

20         Defendant responds that "a finding of a severe impairment at step two does not equal a

21   finding that Plaintiff is disabled, nor does it require any corresponding limitations in an individual's

22   RFC."  [JS at 9 (citing Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228-29 (9th Cir.

23   2009) (noting that a finding of a severe impairment does not necessarily warrant any

24

25       [4]   Dr. Sabow actually testified that plaintiff's migraine headaches were "at worst, . . . a
     common migraine . . . [and] probably mixed headaches, in other words, some migraine
26   characteristics and some like cerebral tension characteristics, kind of a combination headache.
     But this is *not the disabling pounding, nausea, vomiting, severe sonophobia where you are laid
27   out and you're out of it.*"  [AR at 848.]  He also noted that the symptoms plaintiff described are
     "very, very common" and "60 to 70 percent of adults at some time in their lives will have
28   headaches of this nature."  [Id.]

1  corresponding limitations in an individual's ability to perform basic work activities); see Hoopai v.

2  Astrue, 499 F.3d 1071, 1075-76 (9th Cir. 2006)).]  The authorities cited by defendant support this

3  position.  However, as discussed below, in this case it appears that the ALJ did not even take

4  plaintiff's migraine headaches into consideration when she determined plaintiff's work-related

5  limitations.

6        Defendant argues that the ALJ included limitations in her RFC finding that "fully

7  accommodated" plaintiff's headaches, by limiting her "to no work hazards such as working at

8  unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles, and

9  no climbing of ladders, ropes, or scaffolds." [JS at 10 (citing AR at 802).]  This argument is not

10  persuasive, however, as the ALJ stated that she imposed these hazard limitations due to the

11  *drowsiness* and *fatigue* plaintiff testified she experiences as a result of her migraine *medication*,

12  not as a result of the migraines themselves.  [AR at 805].  "Long-standing principles of

13  administrative law require [this Court] to review the ALJ's decision based on the reasoning and

14  factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the

15  adjudicator may have been thinking."  Bray, 554 F.3d at 1225-26 (citation omitted).

16        Defendant next submits that because plaintiff reported that high blood pressure and

17  extreme stress seemed to be factors that caused her headaches,[5] the ALJ's limitations to

18  "noncomplex, routine tasks, no tasks requiring hypervigilance, no interaction with the public, and

19  a static work environment would reduce stress in the work environment," and thus, apparently,

20  would reduce plaintiff's migraines. [Id. (citing AR at 202, 803).]  However, this implicit suggestion

21  that there is a link between these work-related limitations and a likely reduction in plaintiff's

22  migraines is little more than an improper lay opinion. See Banks v. Barnhart, 434 F. Supp. 2d 800,

23  805 (C.D. Cal. 2006) (noting that the Commissioner "'must not succumb to the temptation to play

24  doctor and make [her] own independent medical findings").  In addition, it is another "post hoc

25  rationalization[]," and not a reason actually stated by the ALJ for including these limitations in

26

27

28      [5]  Plaintiff also testified, however, that her migraine headaches do not "necessarily start with blood pressure," and "sometimes . . . they'll just start."  [AR at 847.]

1  plaintiff's RFC.  Indeed, the ALJ apparently imposed these limitations based on the testimony of

2  the psychological medical expert, Dr. Glassmire, who found that plaintiff's depressive syndrome

3  and anxiety orders did not meet or medically equal a listing, but that -- based on his review of

4  plaintiff's mental health records [see AR at 855-61 (citations omitted)] -- he would limit plaintiff "to

5  non-complex routine tasks; no tasks requiring hyper vigilance; and no interaction with the public."

6  [AR at 855.]  Dr. Glassmire never mentioned plaintiff's migraine headaches when he summarized

7  her mental health records and stated his opinion of plaintiff's limitations based on those records.

8  Neither is there any indication that the ALJ specifically took plaintiff's migraine headaches into

9  account when she adopted Dr. Glassmire's limitations.  Bray, 554 F.3d at 1225-26 (citation

10 omitted).

11        Defendant next contends that plaintiff's argument that the ALJ failed to consider her

12 testimony -- that she is sometimes incapable of performing work during and/or immediately

13 following her headaches -- even if true, is not error because those statements are merely the

14 subjective symptom testimony of plaintiff, and the ALJ had no duty to include these statements

15 in plaintiff's RFC. [JS at 11 (citation omitted).]  However, as discussed in more detail below, while

16 the ALJ does not have a "duty" to include plaintiff's subjective symptom statements in the RFC

17 determination, the ALJ still must "evaluate the intensity and persistence of [the] individual's

18 symptoms . . . and determine the extent to which [those] symptoms limit . . . her ability to perform

19 work-related activities . . . ."  SSR 16-3p, 2016 WL 1119029, at *4 (capitalization omitted).  Here,

20 although the ALJ summarized plaintiff's testimony regarding her headaches [AR at 803-04], and

21 acknowledged that plaintiff's migraine headaches "persisted despite treatment," she did not

22 provide any information as to whether, and to what extent, she took plaintiff's migraine headaches

23 into account when determining plaintiff's RFC limitations.

24        Finally, defendant submits that Dr. Sabow's testimony that plaintiff's headaches were not

25 disabling was a conclusion reserved to the Commissioner, and observes that "Dr. Sabow also

26 testified that Plaintiff's headaches would not cause any limitations, though the record indicated

27 other mental health problems."  [JS at 13 (citing AR at 849 ("Q  . . . [S]o you don't think there

28 would be any limits caused by the headaches?"; "A  No.")); see also supra note 4.]  The Court

1  notes, however, that this citation is incomplete as, with regard to possible limitations due to

2  headaches, Dr. Sabow went on to testify that plaintiff "has a lot of other problems and I think there

3  are a host of other problems [in addition to her headaches]. . . . But I think a lot of that, the mental

4  health issues, have to be considered (INAUDIBLE). In this claimant, in that she (INAUDIBLE) *with*

5  *her mental health and some of the neurologic* I believe in general make a statement." [AR at 849.]

6  Thus, although somewhat unclear, it appears that Dr. Sabow considered that plaintiff's mental

7  health and neurological problems *together* have an effect on plaintiff's work-related activities. The

8  ALJ, however, appears to only have considered the mental health limitations imposed by Dr.

9  Glassmire -- who himself considered only plaintiff's mental health issues without taking into

10  account her migraine headaches in formulating his opinion about plaintiff's work-related limitations.

11

12  In short, there is no indication that the ALJ considered plaintiff's severe impairment of

13  migraine headaches, *along with* her mental health issues, in determining the effect of all of

14  plaintiff's severe impairments on her work-related activities. While the Ninth Circuit has concluded

15  that any error at step two is harmless when the ALJ accounts for impairment-related limitations

16  in subsequent steps of the disability evaluation, here there is no indication that although the ALJ

17  determined at step two that plaintiff had the severe impairment of migraine headaches, she

18  properly considered the impact of plaintiff's migraine headaches at later steps. See Lewis v.

19  Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

20  Remand is warranted on this issue.

21

22  **B.    SUBJECTIVE SYMPTOM TESTIMONY**

23  Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's

24  subjective symptom testimony. [JS at 14.] Specifically, plaintiff argues that the ALJ failed to cite

25  any clear and convincing reasons "justifying her adverse credibility determination." [Id.]

26  With respect to plaintiff's testimony, the ALJ stated the following:

27  I find [plaintiff] not entirely credible regarding the alleged limiting effects of her
symptoms. [Plaintiff] has had severe headaches since 1998, yet she continued

28  working until October 29, 2009. [Plaintiff] alleges her migraine headaches

9

worsened, requiring emergency room visits every couple of months, but the medical records do not support her assertion. [Plaintiff's] blood pressure has been elevated at times, but her amlodipine dosage of 10 mg daily did not change from 2010 to 2015, suggesting her hypertension was generally controlled. As discussed, [plaintiff] was stable on her psychotropic medication regimen. There is also evidence of malingering and noncompliance with medications. [Plaintiff] stopped attending her intensive outpatient program and she did not always take her medications as prescribed. Function reports and testimony reveal [plaintiff] was less motivated, lacked energy, needed reminders, took longer to do activities of daily living, and hired help to do repairs and yard work, but she was still capable of tending to personal care, preparing simple meals, doing household chores, driving, shopping in stores, managing money, and socializing with friends and family. [Plaintiff] testified her migraine medication makes her drowsy and fatigued, but this would not have caused her to be off task. She had been taking Maxalt for many years and would have become tolerant of the side effects. Nevertheless, I have assessed hazard restrictions to account for the side effects. [Plaintiff] did not report side effects from her psychotropic medications.

[AR at 804-05.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."[6] Lingenfelter v. Astrue, 504 F.3d 1028,

---

[6]    On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The ALJ's December 11, 2015, decision was issued a few months before March 28, 2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen, 80 F.3d at 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)). Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations. However, because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, and neither party specifically contends that SSR 16-3p should apply herein, the Court need not resolve the retroactivity issue.
(continued...)

1 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

2 objective medical evidence of an underlying impairment 'which could reasonably be expected to

3 produce the pain or other symptoms alleged.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

4 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks

5 omitted).  If the claimant meets the first test, and the ALJ does not make a "finding of malingering

6 based on affirmative evidence thereof" (Robbins, 466 F.3d at 883), the ALJ must "evaluate the

7 intensity and persistence of [the] individual's symptoms . . . and determine the extent to which

8 [those] symptoms limit . . . her ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL

9 1119029, at *4.  An ALJ must provide specific, clear and convincing reasons for rejecting a

10 claimant's testimony about the severity of her symptoms.  Treichler, 775 F.3d at 1102; Benton v.

11 Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

12       Where a claimant has presented evidence of an underlying impairment, and the ALJ did

13 not make a finding of malingering, the ALJ's reasons for rejecting a claimant's credibility must be

14 specific, clear and convincing.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina

15 v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89

16 (9th Cir. 2015).  Where the record contains affirmative evidence of malingering,[7] the ALJ need only

17 provide specific and legitimate reasons for an adverse credibility finding.  See Morgan v. Comm'r,

18 169 F.3d 595, 599 (9th Cir. 1999); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196

19 (9th Cir. 2004).   "General findings [regarding a claimant's credibility] are insufficient; rather, the

20 ALJ must identify what testimony is not credible and what evidence undermines the claimant's

21 complaints."  Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted).

22 The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the

23

24     [6](...continued)
25 Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

26    [7]   The ALJ here suggested there is "evidence of malingering and noncompliance with
medications" [AR at 803-04], yet referred to only one December 13, 2010, medical record that
27 inexplicably reflected malingering as part of an Axis III "Active Problem List." [AR at 1073.] This
contrasts with the March 24, 2015, report of the consultative internal medicine examiner who
28 specifically noted that plaintiff "is not malingering." [AR at 1088.]

1   adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily

2   discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell

3   v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)).  A "reviewing court should not be forced

4   to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling

5   pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not

6   credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

7         Because the matter is being remanded for the ALJ to consider the effects, if any, of

8   plaintiff's headaches on her RFC, the ALJ on remand shall also reconsider plaintiff's subjective

9   symptom testimony in accordance with SSR 16-3p.

10

11                       **VI.**

12             **REMAND FOR FURTHER PROCEEDINGS**

13         The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

14   888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

15   proceedings, or where the record has been fully developed, it is appropriate to exercise this

16   discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

17   v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

18   be resolved before a determination can be made, and it is not clear from the record that the ALJ

19   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

20   appropriate.  See Benecke, 379 F.3d at 593-96.

21         In this case, there are outstanding issues that must be resolved before a final determination

22   can be made.  In an effort to expedite these proceedings and to avoid any confusion or

23   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

24   proceedings. First, the ALJ on remand shall consider the effect(s) of plaintiff's headaches -- either

25   singly or in combination with her other severe impairments -- on plaintiff's ability to perform work-

26   related activities.  Next, after determining whether an affirmative finding of malingering is

27   supported by substantial evidence in the record, the ALJ, in accordance with SSR 16-3p, shall

28   reassess plaintiff's subjective symptom allegations and either credit her testimony as true, or

1    provide legally sufficient reasons, supported by substantial evidence in the case record, for

2    discounting or rejecting any testimony.   Finally, the ALJ shall reassess plaintiff's RFC and

3    determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing

4    in significant numbers in the national economy that plaintiff can still perform.[8]

5

6                                              **VII.**

7                                         **CONCLUSION**

8         **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the

9    decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further

10   proceedings consistent with this Memorandum Opinion.

11        **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

12   Judgment herein on all parties or their counsel.

13        **This Memorandum Opinion and Order is not intended for publication, nor is it**

14   **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

15                                                          *Paul L. Abrams*

16   DATED:  March 9, 2017          _____

17                                               PAUL L. ABRAMS
                                          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28   _____
     [8]     Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to
     return to her past relevant work.

13